# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ANN PIERCE NJOKU,

      Plaintiff,                             Case No. 09-13403
                                                   Hon. Gerald E. Rosen

v.

NORTHWEST AIRLINES, INC.
A foreign profit corporation,

      Defendant.
_____/

## OPINION AND ORDER
## GRANTING DEFENDANT NORTHWEST AIRLINES, INC.'S
## MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on          April 15, 2011

PRESENT:   Honorable Gerald E. Rosen
                         United States District Judge

## I. INTRODUCTION

Plaintiff Ann Pierce Njoku commenced this suit in state court, asserting a negligence claim against Defendant Northwest Airlines, Inc. ("Northwest") arising out of a January 4, 2009 incident in which she tripped and fell while exiting a Northwest aircraft at Detroit Metropolitan Airport in Michigan. Northwest removed the case to this District on August 27, 2009, citing diversity of citizenship between the parties. *See* 28 U.S.C. § 1332(a). The case was subsequently reassigned from District Judge John Feikens to this

Court on November 24, 2010.

Through the motion now pending before the Court, Northwest seeks summary judgment in its favor on Plaintiff's state-law negligence claim. In support of this motion, Northwest argues that Plaintiff cannot establish that Northwest owed her any legal duty because the allegedly dangerous condition was open and obvious. In response, Plaintiff contends that her case is not a garden variety premises liability claim, but rather a general negligence claim, to which the open and obvious doctrine does not apply. Alternatively, if the Court construes Plaintiff's case as a garden variety premises liability case, and the open and obvious doctrine applies, Plaintiff maintains that there were "special aspects" which created an unreasonable risk of harm.

Northwest's motion for summary judgment has been fully briefed by the parties. Having reviewed the parties' briefs and accompanying exhibits, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in the written record, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Northwest's motions "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.

## II. FACTUAL BACKGROUND

Around 8:30 pm on Sunday January 4, 2009, Plaintiff Ann Pierce Njoku, a 50-year-old woman diagnosed with multiple sclerosis since 1979, fell while exiting Northwest flight NW62 through gate A-18 at Detroit Metropolitan Airport. The facts leading up to and surrounding Plaintiff's fall are somewhat disputed.

On the day of the accident, Plaintiff was returning on flight NW62 from Phoenix, Arizona to Detroit, Michigan. Plaintiff claims that during her outbound flight to Phoenix in November 2008, Northwest agents provided her with wheelchair assistance from her entrance to the Phoenix airport, to the ticket counter, through security and the gate, and through the jet bridge and to the plane, where Plaintiff then walked a few steps to her seat. Plaintiff claims Northwest agents similarly provided her with wheelchair assistance as soon as she got off the plane in Phoenix from the jet bridge to baggage claim at the Phoenix airport.

Plaintiff followed the same procedure during her outbound flight to Phoenix as she did during her return to Detroit. At the ticket counter at each airport, she presented an October 10, 2008 letter from Dr. Mitchell Elkiss, in which Dr. Elkiss states Plaintiff's diagnosis with multiple sclerosis and need for assistance "at the airport from curbside to her seat in the plane." (Pl.'s Response Br. Ex. B.) Plaintiff's boarding pass for flight NW62 is marked with special service code "WCHR."

Plaintiff was seated in window seat 18-F, and upon landing in Detroit, Plaintiff claims she witnessed an elderly man seated in the aisle seat near her receive assistance from Northwest agents, who wheeled him off the plane. Plaintiff claims she waited for an extended period of time for assistance, then moved herself to the aisle seat before specifically asking Northwest agents for help in retrieving her carry-on bags and exiting the aircraft. She allegedly received no help and walked, holding her bags, to the exit door

3

alone.[1] When Plaintiff reached the jet bridge, she saw a Northwest agent standing behind a wheelchair. After taking two steps off the plane and towards the wheelchair, Plaintiff fell to ground, landing on her right knee. The Northwest agent assisted Plaintiff into the wheelchair, and airport police and emergency medical personnel responded to the scene. Wayne County Airport Police Officer Terri Harriman interviewed Plaintiff and completed an incident report, while the medical personnel provided medical attention and transported Plaintiff to Annapolis Hospital for further evaluation. At the hospital, Plaintiff was referred back to her treating neurologist, Dr. Elkiss, who prescribed physical therapy for her right leg.

Plaintiff claims she tripped because "there was some of that gray steel that I could see, there was an elevated protrusion and that's – that must have been what tripped me." (Njoku Dep. 115:11-13, April 16, 2010.) According to Officer Harriman's declaration and accompanying report, however, Plaintiff told him "she lost her balance; . . . as she attempted to regain her balance, she fell over a wheelchair sitting on the jet bridge and thereafter landed on her right knee." (Def.'s Mot. Summ. J. Ex. C., at 2-3, 5.)[2] The incident report states Plaintiff was holding her right knee and wincing in pain, and Officer

---

[1] Although the sizes of her bags are unclear, it is undisputed that Plaintiff carried three bags total, including a carry-on bag with her medications, a white shopping bag, and her purse. According to the Wayne Metro Airport Police Report, Plaintiff was carrying a heavy green duffel bag, a purse, and a large white Sonoma bag (Def.'s Mot. Summ. J. Ex. C., at 5.)

[2] Because Northwest does not challenge whether or not Plaintiff tripped over the steel plate, something else, or simply lost her balance, this opinion and order is based on Plaintiff's belief that she did in fact trip over the steel plate.

4

Harriman observed a small amount of dried blood near her right knee. Plaintiff claims she was in a great deal of pain, believed she had cracked her shin, and that "the carrot slicing-like grate on the protrusion" made an impression on her leg and left scars. (Pl.'s Response 7.)

The jet bridge contains a gray steel plate, which covers a gap in the jet bridge floor. The gap is necessary to allow the jet bridge to align properly with the plane. The plate is surrounded by black carpet, and similar pieces of gray steel are present on jet bridges throughout the Detroit Metropolitan Airport. Several hundred other passengers used the jet bridge at gate A-18 on January 4, 2009 without incident. After Plaintiff's fall, Officer Harriman inspected the jet bridge and "did not observe any debris . . . or abnormal condition of the floor of the jet way or jet bridge" and "did notice the normal slight step down from the airplane onto the jet bridge." (Def.'s Mot. Summ. J. Ex. C., at 3, 6.)

As a result of the fall, Plaintiff claims to have suffered injuries to her right knee, which have exacerbated the limitations she had due to multiple sclerosis. She claims she can no longer conduct normal activities, such as grocery shopping and attending church due to weakness in her leg. She did not break any bones, nor did she require stitches for the cut on her knee. She has, however, pursued rehabilitative treatment for an unknown period of time. Plaintiff has not alleged that any physician has placed her under any medical restrictions as a result of this fall, nor has she claimed any change in employment status or employability.

### III.  ANALYSIS

A.  **Standards Governing Northwest's Motion**

Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[3]  As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party.  *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006).  Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must-by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on

---

[3]  On December 1, 2010 a new version of Fed. R. Civ. P. 56 took effect.  Due to the parties' submission of summary judgment motions prior to the effective date, the Court's opinion and order is decided under, and cites, the old rule.

the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks and citation omitted).

**B.     Defendant Northwest Owed No Duty to Plaintiff Njoku**

Because this is a diversity action, the Court applies state law "in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). The parties do not dispute that Michigan law controls.

**1.  Plaintiff's ordinary negligence claim fails as a matter of law**

Although Defendant categorizes this matter as a premises liability claim, Plaintiff responds that her claim sounds in ordinary negligence rather than premises liability, because Northwest failed to provide her with required wheelchair assistance. "Negligence is not found to exist unless an actor who is under a duty to act fails to act after he has perceived or should have perceived an unreasonable risk of harm to another." *Samson v. Saginaw Professional Bldg, Inc.*, 393 Mich. 393, 224 N.W.2d 843 (1975). Whether circumstances exist causing a defendant's duty to arise, is a threshold question of law for the trial court to decide. *Riddle v. McLouth Steel Products Corp.*, 440 Mich. 85, 95, 485 N.W.2d 676 (1992).

Here, Plaintiff cites the Air Carrier Access Act of 1986, Northwest's own official policies related to people with disabilities, and Dr. Elkiss's letter as the three sources

7


which create an affirmative duty for Northwest to provide her with wheelchair assistance. Prior to the reassignment of this case, Judge Feikens denied [Dkt. #23] Plaintiff's motion to amend complaint to add a claim under the Air Carrier Access Act of 1986 (ACAA), 46 U.S.C. §41075. Judge Feikens's ruling was based on the finding that there is no private right of action under the ACAA. *Thomas v. Northwest Airlines Corp.*, No. 08-11580, 2008 WL 4104505 (E.D. Mich. Sept. 2, 2008). Without the existence of a private right of action, Northwest cannot be held liable for negligence. *Taylor v. Saxton*, 133 Mich.App.302, 306, 349 N.W.2d 165, 167 (1984). Therefore, the ACAA does not create an affirmative duty for wheelchair assistance, for which Northwest may be held liable under a negligence theory.

Plaintiff's argument that Northwest's own internal policies created a duty to provide Plaintiff with wheelchair assistance is also without merit. First, Plaintiff fails to cite any authority supporting the claim that such policies create a legally enforceable duty. Second, although Northwest's policies generally describe various forms of assistance the airline provides, it is undisputed that Northwest specifies the type of assistance a particular passenger is to receive by placing a special service code on the passenger's boarding pass. The "WCHR" code description states "[p]assenger needs wheelchair to/from aircraft. However, can ascend/descend steps and make their own way to/from cabin seat." (Def.'s Mot. for Summ. J. Ex. C.) Another code, "WCHC", is for a "[p]assenger [who] cannot walk. Needs wheelchair to/from the aircraft. Must be carried up/down steps and to/from cabin seat." (*Id.*)

Here, Plaintiff claims Northwest was negligent, because it failed to "provide Plaintiff with wheelchair assistance from her seat on flight NW262 until she reached curbside out of the airport." (Plaintiff's Response, 8.) Plaintiff's boarding pass, however, was clearly marked with special service code "WCHR", not "WCHC." (Def.'s Mot. for Summ. J. Ex. B.) It is undisputed that Northwest provided Plaintiff with wheelchair assistance to and from the aircraft for all flights during her round trip from Detroit to Phoenix in accordance with code "WCHR." Plaintiff does not allege that she requested special service code "WCHC", which would include help to and from her seat and up and down any steps, at any point during her travel. In fact, the record reflects that Plaintiff has never requested or received the "WCHC" code or wheelchair assistance from her seat during any of her flights in the past, further supporting the fact that the "WCHR" service was appropriate for her.[4] Therefore, the Court finds no factual support to the claim that Northwest owed a duty to provide wheelchair assistance to Plaintiff from her airplane seat.

Finally, Plaintiff alleges that Northwest made the "WCHR" notation on her boarding pass after receiving the letter from Dr. Elkiss, and this notation somehow bound Northwest to provide her with assistance from her plane seat to curbside as stated in the letter. First, Plaintiff again fails to cite any authority to support the claim that Dr. Elkiss's

---

[4] Additionally, the Northwest policies which Plaintiff includes with her response state that "[w]e require at least 48 hours advance notice and one hour advance check-in on day of departure if you: . . . [r]equire the use of an on-board wheelchair provided by NWA." (Pl.'s Response Ex. C.) Plaintiff fails to allege that she complied with the notice and advance check-in requirements.

letter created a legal duty for Northwest. Second, as already discussed, Northwest provided all services to Plaintiff in accordance with the "WCHR" designation, and Plaintiff did not request a "WCHC" designation. Therefore, the Court finds the letter did not create any legal duty for Northwest. Having dismissed the grounds for all three sources cited by Plaintiff, the Court finds no factual support for a claim that Northwest had a duty to provide Plaintiff with assistance.

### 2. Plaintiff's premises liability claim fails as a matter of law

Having found no grounds for an ordinary negligence claim, the Court shifts its analysis to Northwest's motion based on premises liability, which Plaintiff also addresses in her response. As in a claim for ordinary negligence, a premises liability claim first requires that a plaintiff prove that the defendant owed a duty to the plaintiff. *Berryman v. K Mart Corp.*, 193 Mich. App. 88, 91-92, 483 N.W.2d 642 (1992). In Michigan, a property owner's duty to a person who enters the premises depends on the visitor's status. *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596, 614 N.W.2d 88, 91 (2000). An invitee is "a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." *Id*. at 92.

> The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards.

*Id.*

Generally, a property owner's duty of care does not extend to protecting an invitee from open and obvious dangers. *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516, 629 N.W.2d 384, 386 (2001). The open and obvious doctrine is not an "exception" to the duty generally owed to invitees, but rather an integral part of the definition of that duty. *Id.* Where special aspects of a condition make even an open and obvious risk unreasonably dangerous, the property owner has a duty to take reasonable precautions to protect invitees from that risk. *Id.* The test for determining whether a condition is open and obvious is whether "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Novotney v. Burger King Corp.*, 198 Mich. App. 470, 475, 499 N.W.2d 379, 381 (1993).

Here, Northwest argues that the gray steel plate, which contrasts with the black carpet of the jet bridge, was an open and obvious danger. The Court finds merit in Defendant's argument and holds that the gray steel plate was either an open and obvious danger or simply not a danger at all. It is undisputed that several hundred other passengers walked over the steel plate on the jet bridge at gate A-18 on the same day as Plaintiff without incident. Plaintiff does not provide any evidence that this particular steel plate, or other similar plates which exist throughout the airport, have ever posed a risk of harm to passengers. Therefore, the Court finds that the steel plate must have been open and obvious enough for ordinary users to discover it while deplaning, or it must not have been protruding enough to cause a dangerous condition. Additionally, Plaintiff's

statement that she tripped over "that gray steel that I could see" is further support of the Court's conclusion that the plate was discoverable, even to Plaintiff herself, upon casual inspection.[5]

Finally, Officer Harriman's inspection of the jet bridge confirms that no dangerous conditions existed. Plaintiff argues that Officer Harriman's inspection supports her theory that the steel plate was not open and obvious, but rather an unobserved dangerous condition, which created an unreasonable risk of harm under the special aspects exception to the open and obvious doctrine. Plaintiff's special aspects argument is nonsensical. The special aspects exception applies to dangers that *are* open and obvious, but so dangerous that they pose an unreasonable risk of severe harm despite their open and obvious nature. *Lugo*, 629 N.W.2d at 387. Examples of open and obvious conditions that have special aspects include a flooded building with only one exit, making evacuation through the water unavoidable, and a thirty foot pit in the middle of a parking lot, which poses a significant threat of injury of death despite the pit being open and obvious. *Id.* Plaintiff fails to explain how her case has any similarity to these examples or how the steel plate can qualify as unavoidable or a severe risk under the special aspects exception. Therefore, the Court concludes that there is no question that the steel plate was either open and obvious or simply not a danger requiring Northwest to exercise a duty of care.

---

[5] Whether Plaintiff's statement refers to her observation of the steel plate before or after her fall is irrelevant to the Court's analysis, because relevant fact is simply that the plate was visible.

## V. **CONCLUSION**

For all of the foregoing reasons,

    IT IS HEREBY ORDERED that Northwest's August 2, 2010 motion for summary judgment [Dkt. # 19] is GRANTED.

    Let judgment be entered accordingly.

                                s/Gerald E. Rosen  
                                Gerald E. Rosen,  
                                Chief Judge, United States District Court

Dated: April 15, 2011


I hereby certify that a copy of the foregoing document was served upon counsel of record on April 15, 2011, by electronic and/or ordinary mail.

                                s/Ruth A.Gunther  
                                Case Manager  
                                (313) 234-5137